UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PETER McINTOSH,

                    Petitioner,

            v.                                    **DECISION AND ORDER**
                                                  04-CR-255S
UNITED STATES OF AMERICA,                         05-CV-666S

                    Respondent.


## I. INTRODUCTION

Petitioner Peter McIntosh appeared before this Court on October 4, 2004, executed a Waiver of Indictment, and pled guilty to a one-count Information charging him with attempting to reenter the United States, in violation of 8 U.S.C. §1326, after previously having been deported following conviction for an aggravated felony.  This Court accepted McIntosh's guilty plea and, on January 10, 2005, sentenced him to 41 months' imprisonment.  McIntosh's judgment of conviction became final on February 4, 2005.[1]

On August 26, 2005, McIntosh filed a motion to amend or correct his sentence, "seek[ing] redress to this sentencing issue through a 28 U.S.C. § 2255 proceeding."[2] (Docket No. 14 at 1, 2.)  McIntosh alleges that the Government breached a term of his plea agreement and he is seeking the remedy of specific performance.  On February 21, 2006, McIntosh filed an "addendum motion," raising United States v. Booker, 543 U.S. 220, 125

---

[1] McIntosh's Judgment was entered on January 21, 2005 and, because no appeal was filed, judgment became final ten days thereafter, exclusive of Saturdays and Sundays.  Moshier, v. United States, 402 F. 3d 116, 118 (2d Cir. 2005); Fed. R. App. P. 4(b) and 26(a)(2).

[2] The Government filed an Answer and Memorandum of Law in Opposition to the Motion. (Docket No. 16.)  McIntosh filed a Reply Memorandum (Docket No. 17) and a subsequent Addendum Motion (Docket No. 18).

S. Ct. 738, 160 L. Ed. 2d 621 (2005), and requesting that his sentence be corrected.

For the reasons stated below, McIntosh's § 2255 motion, as amended, is denied.

## II. BACKGROUND

McIntosh's October 4, 2004 guilty plea was made pursuant to a written plea agreement.  The plea agreement's preamble states as follows:

> The defendant, PETER MCINTOSH, and the Uniteds States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

(Docket No. 16, Ex. A.)

The provision McIntosh claims was breached is found at paragraph 16:

> 16.   To the extent that the defendant applies for a transfer from the United States to Canada while he is in the custody of the Bureau of Prisons pursuant to Title 18, United States Code, Section 4100, *et seq.*, the government agrees not to oppose such an application.

*Id.*

As part of his plea, McIntosh agreed that he:

> [K]nowingly waives the right to appeal, modify pursuant to Title 18, United States Code, Section 3582(c)(2) and collaterally attack any sentence imposed by the Court that is within or less than the sentencing range for imprisonment, fine, and supervised release set forth in Section II of this agreement . . . .   The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

*Id.* ¶ 21.

McIntosh did apply for a transfer to Canada and, on May 20, 2005, the United States Attorney for the Western District of New York received from the United States Department of Justice, Criminal Division, Office of Enforcement Operations ("OEO"), a document titled

2

"Recommendation Request."  The OEO sought a "recommendation as to whether McINTOSH, PETER should participate in the international prisoner transfer program." (*Id.*, Ex. B.)  The United States Attorney for the Western District of New York responded on the same day, stating that "[p]aragraph 16 of the Plea Agreement provides that government would not oppose request for transfer."  (*Id.*; Docket No. 14, attach. 1.)

One month later, by letter dated June 20, 2005, the OEO advised Caroline Turcotte, Manager, International Transfers, Correctional Service of Canada, that it had denied McIntosh's request for transfer to Canada based on "his prior state felony conviction for drug trafficking and his earlier deportation by federal immigration authorities." (Docket No. 14, attach. 2.)  McIntosh filed the instant motion on August 26, 2005.

### III. DISCUSSION

### A.    The Government did not Breach Paragraph 16 of the Plea Agreement

McIntosh concedes that "the prosecutor handling [his] case did not oppose [his] application when asked."  (Docket No. 14 at 2.)  He urges, however, that the plea agreement was breached when the OEO denied his transfer request.  McIntosh reasons that the plea agreement is binding on the entire Department of Justice, not just the United States Attorney for the Western District of New York.  Because the OEO is an agency within the Department of Justice, McIntosh urges that it was bound to approve his transfer, and its failure to do so breached his plea agreement.

After McIntosh's petition was fully briefed, this District's Chief Judge, Richard J. Arcara, issued a decision rejecting precisely the same argument made in a case that is factually indistinguishable from this petition.  DeBarros, 03-CV-786A, 97-CR-193A, 94-CR-

222A, 2006 U.S. Dist. LEXIS 62662, at *5-6 (W.D.N.Y. Sept. 1, 2006) .  This Court finds no basis to depart from the reasoning set forth therein.

Like this case, the preamble of the DeBarros plea agreement defined "the government" as encompassing only the United States Attorney for the Western District of New York.  Chief Judge Arcara took note of that express definition and also referenced Second Circuit authority holding that plea agreements are binding only on the office of the United States Attorney for the district in which the plea is entered, unless it affirmatively appears the agreement contemplates a broader restriction or scope.  *Id.* at *6-7 (citing United States v. Annabi, 771 F.2d 670, 672 (2d Cir. 1985), and United States v. Salameh, 152 F.3d 88, 120 (2d Cir. 1998)); *see also*, United States v. Laskow, 688 F. Supp. 851, 853 (E.D.N.Y.), *aff'd*, 867 F.2d 1425 (2d Cir. 1988) (mere use of the term "government" in the plea agreement does not create an affirmative appearance that the agreement binds other districts).

In his motion, McIntosh relies on United States v. Thournout, 100 F.3d 590, 594 (8th Cir. 1996) for the proposition that, absent an express limitation, promises made by an Assistant United States Attorney in one district are binding on the government at large and not just the United States Attorney in a particular district.  Reliance on Thournout is misplaced for two reasons.  First, even assuming the Second and Eighth Circuits are not in accord on this issue, this Court is bound to follow Second Circuit precedent.  Second, as McIntosh notes in his motion, Thournout clearly recognizes that a United States Attorney can expressly limit the obligations set forth in a plea agreement so that they are binding only on a particular district or agency.  100 F.3d at 594-95.  In this Court's view, just such a limitation is set forth in the preamble to McIntosh's plea agreement.  McIntosh has

4

not pointed to any language in the plea agreement that renders the use of the term "government" ambiguous and this Court, on review of the agreement, has found no ambiguity.

There are further similarities between this case and DeBarros.  In addition to limiting the definition of "government," McIntosh's plea agreement does not dispense with the requirement that he make application for a transfer, nor does it guarantee that his request for transfer to Canada will be approved.  DeBarros, 2006 U.S. Dist. LEXIS 62662, at *7-8; Docket No. 16, Ex. A.  Rather, it clearly and unambiguously states that "the government," defined as the United States Attorney for the Western District of New York, will not oppose McIntosh's transfer application.  The United States Attorney for the Western District of New York fully performed its promise in this regard when it advised the OEO of the existence of the plea agreement and the relevant term—i.e., the agreement not to oppose.  The OEO's denial of McIntosh's transfer request is not, as he contends, "directly contrary" to the plea agreement, because the plea agreement does not promise that such a request would be granted.

Finally, as in DeBarros, the paragraph McIntosh claims was breached, by its terms, distinguishes between "the government" and the Bureau of Prisons.  There simply would be no need to draw this distinction in paragraph 16 if, as McIntosh argues, the term "the government" encompasses every agency within the Department of Justice, which includes the Bureau of Prisons.

McIntosh's additional arguments, made in a reply to the Government's opposition and in his "addendum motion," are equally unavailing.  McIntosh provides no support for

his suggestion that the Government had a duty[3] to contact OEO in advance and include a transfer guarantee in his plea agreement.   Similarly, McIntosh's intimation that the prosecutor promised his attorney during plea negotiations that he would be transferred to Canada (Docket Nos. 17 at 5; 18 at 4), is not supported by a confirming affidavit from his defense counsel or any other evidence.  To the contrary, during his plea, McIntosh attested to his understanding that the government's agreement not to oppose his application was not a guarantee that he would wind up in a Canadian prison.  (PT 17.)[4]

Because the government has already performed its obligation under the plea agreement not to oppose McIntosh's transfer request, he is not entitled to the requested relief of specific performance.

**B.    McIntosh Waived his Right to Collateral Review and Cannot Invoke <u>Booker</u>.**

McIntosh's "addendum motion" provides additional briefing on his claim that the plea agreement was breached and raises the new argument that he should be afforded favorable treatment, pursuant to <u>United States v. Booker</u>, because the repeal of the "Rockefeller Drug Laws" in February 2005 alters the seriousness of his prior felony conviction.  McIntosh argues that his sentence should be reduced because, given these post-plea changes in the law, his sentence is now overly punitive.  This Court will liberally construe McIntosh's "addendum motion" as a request to amend his § 2255 motion, and consider the merits of his new claim, pursuant to which he seeks a sentencing correction.

<u>Booker</u> does not apply to judgments that were final prior to January 12, 2005. <u>Guzman v. United States</u>, 404 F.3d 139, 140 (2d Cir. 2005) (<u>Booker</u> does not apply to

---

[3]  McIntosh characterizes this purported duty as an ethical and logical one.  (Docket No. 17 at 2.)

[4]  Citations to "PT ___" are to the transcript of the plea colloquy on October 4, 2004.

cases on collateral review where defendant's conviction was final as of the date that Booker issued).   However, as noted above, McIntosh's judgment was not final until February 4, 2005, after Booker was decided.

While a lack of finality as of January 12, 2005 entitles defendants, under some circumstances, to consideration for resentencing pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), that relief is not available to McIntosh because he waived his right to attack the merits of his sentence.  (Docket No. 16, Ex. A ¶ 21.)  Specifically, McIntosh waived his right to collaterally attack any sentence that is within or less than the sentencing range of 41 - 51 months set forth in the plea agreement.  (Id. ¶¶ 13, 21.)  McIntosh does not dispute that he was sentenced to 41 months' imprisonment, at the lowest end of that range.  (Docket No. 11.)

The Second Circuit has long held that:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51 (2d Cir. 1993).

The United State Supreme Court's ruling in Booker has not altered this general rule and does not invalidate an otherwise valid appeal waiver.  See United States v. Roque, 421 F.3d 118, 121 (2d Cir. 2005), cert. denied sub nom., Delahoz v. United States, ___ U.S. ___, 126 S. Ct. 1094, 163 L. Ed. 2d 908 (2006) ("defendant who, prior to January 12, 2005, entered into an otherwise enforceable plea agreement that included a waiver of right to appeal a sentence may not seek to withdraw his plea based on alleged mistake as to the mandatory nature of the United States Sentencing Guidelines"); United States v.

7

Morgan, 406 F.3d 135, 138 (2d Cir. 2005) (defendant who pleads guilty pursuant to plea agreement that includes an enforceable waiver of right to appeal may not challenge sentence based on subsequent revelations in Booker); United States v. Rodriguez, 416 F.3d 123, 128 (2d Cir. 2005) (enforcing defendant's waiver of appeal rights and denying request for remand to District Court for consideration of resentencing based on Booker and Crosby); United States v. Kamadeen Idowu Oladimeji, 463 F.3d 152, 155 (2d Cir. 2006) ("As for defendants who entered a plea agreement with an appeal waiver before the Supreme Court decided Booker . . . 'the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.'" (quoting Morgan, 406 F.3d at 137)); Reneau v. United States, 01 Cr. 965-4(SHS) 05 Civ. 10695 (SHS), 2006 U.S. Dist. LEXIS 76960 (S.D.N.Y. Oct. 20, 2006) (denying § 2255 petition where petitioner, who pled guilty pre-Booker but whose judgment became final post-Booker, knowingly and voluntarily waived right to collaterally attack his sentence).

Having agreed to a waiver of his appeal rights, McIntosh's petition cannot succeed unless he can demonstrate that the waiver is invalid.  Generally, appeal waivers are enforceable even where, as here, the circumstances purportedly giving rise to the collateral attack occurred after the entry of the plea.  DeBarros v. United States, 2006 U.S. Dist. LEXIS 62662, at *5-6 (citing Garcia-Santos v. United States, 273 F.3d 506, 508-509 (2d Cir. 2001) (citation omitted); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998)). Limited exceptions to waiver enforceability have been found only where it can be shown that: 1) the waiver was not made knowingly, voluntarily, and competently; 2) the sentence imposed was based on constitutionally impermissible factors (such as race or ethnicity); 3) the government breached the plea agreement; or 4) the court failed to enunciate any

8

rationale for the sentence.  Campusano v. United States, 442 F. 3d 770, 774 (2d Cir. 2006) (*quoting* United States v. Gomez-Perez, 215 F. 3d 315, 319 (2d Cir. 2000)).  The sole challenge McIntosh raises is the Government's alleged breach of the plea agreement, which this Court has already determined is without merit.

Although McIntosh does not claim the first exception, this Court has reviewed the record presented, as well as the transcripts from McIntosh's plea and sentencing, and is satisfied that McIntosh's plea was a knowing and voluntary one.  When he appeared and pled guilty, McIntosh stated that he has the equivalent of a 12th grade education, and reads, writes and understands the English language "perfectly."  (PT 5.)  He further attested that he was satisfied with his lawyer (PT 3), understood his trial rights (PT 7-8) and wished to go forward with his plea agreement (PT 8).  The Court reviewed the provisions of the plea agreement with McIntosh who stated his understanding of each, including his possible criminal history number and sentencing exposure (PT 16), and the waiver of his right to appeal a sentence falling within the range of 41 to 51 months or less (PT 19).

Because McIntosh's plea was knowing and voluntary, the appeal waiver provision of the plea agreement is valid and enforceable and he is not entitled to collaterally attack the merits of his sentence.

## IV. CONCLUSION

For the reasons stated above, Petitioner Peter McIntosh's "addendum motion" to amend his § 2255 motion is granted.  However, because the government did not breach the plea agreement and because McIntosh knowingly and voluntarily waived his right to collaterally attack his sentence, his § 2255 motion, as amended, is denied in its entirety.

Because the issues raised here are not the type of issues that a court could resolve

in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and denies a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).  Further requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## ORDERS

IT HEREBY IS ORDERED, that Petitioner Peter McIntosh's Motion for Specific Performance (Docket No. 14), as amended by his Addendum Motion to Correct Sentence (Docket No. 18) is DENIED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that leave to appeal as a poor person is DENIED.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   March 10, 2007
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge